UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   4:09 CR 96 RWS |
| | ) | |
| ANTHONY RIZZUTI, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

Comes now the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Robert F. Livergood, Assistant United States Attorney for said District, and files its response to defendant's objections to the "Presentence Investigation Report."  ("PSR).  For its response, the Government states the following:

1. **Objection One:**  Defendant objected to PSR ¶ 8 claiming that the defendant did not believe that the agent who portrayed "Allie" was a fourteen (14) year-old female.  Defendant and "Allie," an undercover officer located in Ohio, communicated with each other using online chats. During the course of the officer's investigation he recorded the chats between "Allie" (indicated as "alliegirloh") and the defendant (indicated as "ndmaverick").   The following chats, in pertinent part, indicate that defendant knew the age of "Allie":

   a. **August 2, 2004:**

      alliegirloh (10:16:01 PM): wouldn't it be easier for u to come here?

1

    ndmaverick (10:16:34 PM): yeah... but I can't get there for like 4 or 5 weeks... it'd be easier for me if you come here

    alliegirloh (10:17:28 PM): no not for me, im 14 years old and can't just go anywhere anytime

    ndmaverick (10:17:59 PM): ok... so when is a good time for me to come there?

    alliegirloh (10:18:41 PM): that's up to u and ur schedule how old r u?

    ndmaverick (10:18:54 PM): 24

b. **August 24, 2004:**

    ndmaverick (8:34:34 PM): so when're you gonna have pics for me?

    alliegirloh (8:34:49 PM): when i get a scanner or camera

    ndmaverick (8:34:59 PM): when's that gonna be?

    alliegirloh (8:35:22 PM): i don't know im 14 with no money...lol

    ndmaverick (8:35:40 PM): hahaha

c. **March 23, 2005:**

    ndmaverick (9:02:05 PM): ok... well let me know asap if you can do it... I'll get you a ticket

    alliegirloh (9:02:25 PM): hey can a 14 year old board without a parent?

    ndmaverick (9:02:41 PM): do you have photo ID?

c. **April 17, 2005:**

    ndmaverick (8:26:31 PM): I've been waiting for months for pictures, and you "can't seem to get them working"

    alliegirloh (8:26:32 PM): u seem to forget im 14 years old....i just can't do things like an adult

    d.    **July 2, 2005:**

> ndmaverick (7:26:56 PM): remind me how old you are
>
> alliegirloh (7:27:07 PM): 14 is that ok
>
> ndmaverick (7:27:17 PM): yup

Thus, the contents PSR ¶ 8 are properly included in the PSR.

    2.  **Objection 2:** Defendant objected to PSR ¶ 10 claiming that the defendant did not determine to meet "Hanna," an undercover officer from Maryland Heights, Missouri, but did so at her insistence. Defendant and "Hanna" communicated with each other using online chats and conversed over the telephone. During the course of the officer's investigation, she recorded the chats between "Hanna" and the defendant. The following chat, in pertinent part, indicates that the defendant (indicated as "Tony R") wanted to meet "Hannah" (indicated as "Hannah S.") on June 1, 2008:

**May 31, 2008:**

Tony R (5/31/200885638 PM) yeah .. so I'm supposed to go to a movie with my brother tonight won't get out until like 12:30... will you still be up?

Hannah S (5/31/20088:57:08 PM): um idk

Hannah S (5/31/200885717 PM) u got to go to the movie

Hannah S (5/31/200885718 PM) lol

Tony R (5/31/2008857:33 PM): I don't... but it'd be mean if I didn't

Hannah S. (5/31/2008 857:47 PM): oh

Hannah S. (5/31/2008 8:57:54 PM): so liek when r u levin

Tony R (5/31/2008 858:31 PM): tomorrow afternoon

Tony R (5/31/20088:59:16 PM): what're you doing tomorrow morning?

Hannah S. (5/31/2008 859:27 PM): notta

Hannah S. (5/31/2008 8:59:35 PM): whta r u doin

Tony R (5/31/2008 8:59:39 PM): not sure yet

Tony R (5/31/20088:59:56 PM): could you get away for a little bit? .. or would it be tough?

Hannah S. (5/31/2008 9:00:45 PM): um i think cuz my mom is goin to see my grand ma to do her hair like at 8 she leavin

Hannah S. (5/31/20089:00:47 PM): im not goin

Tony R (5/31/2008 9:01:12 PM): how long will that take?

Hannah S. (5/31/2008 9:01 :35 PM): she lives like in il. ... like 2 hour away um quiny

Hannah S. (5/31/2008 9:01:42 PM): quincy

Tony R (5/31/20089:02:16 PM): oh wow... so you'll be alone for quite a while?

Hannah S. (5/31/2008 9:02:40 PM): um like a lit whil ya

Hannah S. (5/31/2008 9:02:48 PM): so like u havin fun or what

Tony R (5/31/20089:02:50 PM): who else would be there?

Hannah S. (5/31/20089:02:56 PM): no one silly

Tony R (5/31/20089:03: 19 PM): that's what I thought... but you'll be alone for like 4-5 hours, right?

Hannah S. (5/31/2008 9:03:32 PM): um yea

Tony R (5/31/20089:03:40 PM): hmmmm... ok

Hannah S. (5/31/2008 9:03:46 PM): like may be a bit long er

Hannah S. (5/31/20089:03:53 PM): y

Tony R (5/31/2008 9:04:05 PM): so... I could call you when I get done with the movie late tonight. .. or I could call you tomorrow morning

Tony R (5/31/2008 9:04:14 PM): what do you think?

4

Hannah S. (5/31/20089:04:34 PM): u can like cal tonite i put my phone on vibe

Tony R (5/31/2008 9:04:44 PM): ok

Hannah S. (5/31/20089:04:59 PM): u goin now

Tony R (5/31/2008 9:05:10 PM): just about

Not only did the defendant chat with "Hannah" but he also had a telephone conversation with the undercover officer posing as "Hannah." The officer summarized the conversations in her police report. At 9:05 p.m. on May 31, 2008, defendant called "Hannah" and asked her if she was still able to sneak out of her house to meet him. When she said she could, he told me that he wanted her to wear shorts and a tight tank top. He added that they would have sexual intercourse. He asked if he could take nude pictures of her while we they were having intercourse. Defendant then said that he would contact her again after he dropped his brother off.

During another telephone conversation around 1:10 a.m. on June 1, 2008, defendant called "Hannah" and said he had dropped his brother off and was in the area of where she said "Hannah" lived. Defendant asked "Hannah" for her address so he could pick her up. She would not give him his address and they agreed on a meeting place where he could pick her up.

Defendant was driving in the vicinity of his and "Hannah's" meeting place during the early morning hours of June 1, 2008. The officers were in a police vehicle in the same area. When they saw the defendant, they turned on their emergency lights and he stopped his vehicle. The investigative officer approached the defendant who was in the vehicle by himself. The officer asked the defendant what he was doing in the area. The defendant said he was there to visit a friend named Hannah. He was then placed under arrest. The defendant was searched and the

5

officers found four Trojan condoms in his shorts' pocket, and a Casio camera and two Sandisk memory cards in the lower left pocket of his shorts.

It is clear from the evidence that defendant was there to meet "Hannah" on his own volition. Although defendant told the investigative officer during the subsequent interview that "Hannah" said she would be disappointed if the defendant did not meet with her, the undercover officer posing as "Hannah" said she did not say that to defendant. Likewise, defendant's prior chats and conversation indicate that the defendant was ther to have sex with "Hannah" and take pictures of them having sex. He was not there because she would be disappointed if he did not show up.

Thus, the contents of ¶ 10 were properly included in the PSR.

3. **Objection 3:** Defendant objected to PSR ¶ 11 claiming that he did not admit that "he was trying to meet a female that he believed to be 14 years old." This is contrary to the statement defendant made to the investigating officer during his interview after the arrest. The officer wrote:

> I first asked Rizzuti what he was doing on Coventry Trail that evening. He replied that he was on the street looking for a subject that he had been conversing with over the internet. He identified this person as being "Hannah".  I asked him if he knew Hannah's age and he replied "14."

During the interview, the defendant also admitted that he wanted to have sex with "Hannah" and that his chats were not just fantasies:

> As noted in the original report, during several internet chats and phone conversations, Rizzuti discussed with Hannah graphic sex acts he wanted to perform on her. He also purportedly masturbated while he talked with her on the phone and urged her to masturbate as well. When I asked the subject about these graphic communications he had with a 14 year old girl, Rizzuti said he was ashamed of his conduct and felt at some point his "internet fantasies" became real. He acknowledged his actions were inappropriate and then reiterated his "sexual frustration" regarding his girlfriend caused him to do some things he

knew was wrong. He added, however, that this was not an excuse and admitted that he had "crossed the line." When I asked Rizzuti if he was living a fantasy when he went to meet Hannah for a sexual encounter, the subject replied "no, that was real."

Defendant also objected to PSR ¶ 11's stating that:

[a] search of the defendant's Yahoo messenger and email accounts[] revealed that the defendant had several conversations with minor females where [he] requested that they take pictures of themselves nude or of their vaginal areas.  Several pictures depicting young female's vaginal areas and of females posing in provocative ways were located in the messenger and email accounts.

Defendant is correct that, other than contact with the undercover officers, none of the other suspected minors have been identified.  Nevertheless, regarding the images of young females' vaginal areas, Det. House, of the Maryland Heights Police Department,  has viewed the images and based on her experience believes that some of the images are of minor females.

Thus, the contents of ¶ 11 were properly included in the PSR.

4.  **Objection 4:** Defendant objected to PSR ¶ 13 claiming that none of the images listed in that paragraph constitute unlawful material.  Defendant states that the images do not form part of the offense of conviction or its relevant conduct for the purposes of § 1B1.3, citing United States v. Sheahan, 31 F.3d 595 (8th Cir. 1994).  In Sheahan, the court wrote, "we have interpreted the relevant conduct guideline, U.S.S.G. § 1B1.3, to allow the sentencing court to consider conduct beyond the count of conviction, including conduct contained in dismissed counts of the indictment."  Id. at 559 (citations omitted).  The court noted that "[r]elevant conduct is defined as all acts and omissions 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'  Under the Guidelines, '[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar

modus operandi.'" Id. (citations omitted) (emphasis in original).  Defendant's conduct in viewing images of child erotica, young females wearing swimming suits and sheer clothing where some of the individuals were posed with the legs open, constitute defendant's common scheme or plan and thus is relevant conduct.

Even if the Court determines that the information does not constitute relevant conduct, the Court may consider it.  The conduct involves "information concerning the background, character and conduct of the defendant" and may be considered by the Court under § 1B1.4, unless otherwise prohibited by law.  Section 1B1.4 "distinguishes between factors that determine the applicable guideline sentencing range (§ 1B1.3) and information that a court may consider in imposing sentence within that range."  Thus, even if the conduct was not part of the "Offense Conduct" the information could have been included in the Presentence Investigation Report under paragraph 37, Offense Behavior Not Part of Relevant Conduct.  See Office of Probation and Pretrial Services, Administration Office of the United States Courts, Publication 107, Presentence Investigation Report at III-16 - III-17 (Rev. March 2006); see also United States v. Rogers, 423 F.3d 823, 828 - 29 (8th Cir. 2005).

Thus, the contents of ¶ 13 were properly included in the PSR.

                                                Respectfully submitted,

                                                RICHARD G. CALLAHAN
                                                United States Attorney

                                                *s/ Robert F. Livergood*
                                                ROBERT F. LIVERGOOD, #22937
                                                Assistant United States Attorney
                                                111 S. 10th Street, Room 20.333
                                                St. Louis, Missouri 63l02
                                                (314) 539-2200

**CERTIFICATE OF SERVICE**

  I hereby certify that on April 29, 2010, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Adam D. Fein
Rosenblum, Schwartz, Rogers & Glass, PC
120 S. Central Avenue, Suite 130
Clayton, MO 63105
(314) 862-4332

                 *s/ Robert F. Livergood*
                 ROBERT F. LIVERGOOD, #22937
                 Assistant United States Attorney